UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHANGELO SCRUGGS,

        Plaintiff,

                v.                                  Civil Action No.  07-2255 (JDB)

GETINGE USA, INC.,

        Defendant.

MEMORANDUM OPINION & ORDER

        Before the Court are three motions filed by defendant -- a motion for sanctions, a motion

for leave to file a third supplemental memorandum in support of the motion for sanctions, and a

motion to strike a late-designated expert report.  These motions are but the latest chapters in

counsels' continuing inability to conduct discovery civilly and reasonably.  All three motions will

be denied.[1]

BACKGROUND

        Defendant filed a motion for sanctions on February 27, 2009, seeking to strike plaintiff's

wage loss claim and requesting an order requiring plaintiff to submit to an HIV screen.  With

respect to the wage loss claim, defendant contended that plaintiff had willfully withheld the

identity of two doctors and pharmacy records in violation of court orders, thus demonstrating that

he was concealing a pre-existing back condition that would independently reduce his future

earnings.  When plaintiff explained that he had simply forgotten that he had received treatment

_____

        [1] Also before the Court is plaintiff's motion for a hearing, which was filed as part of his
opposition to defendant's motion for sanctions.  Because the Court is able to decide the pending
motions on the basis of the current record, no hearing is necessary and that motion will be denied
as well.

from those two doctors, defendant asserted that plaintiff was lying.  As to the HIV issue,

defendant argued that plaintiff's withholding of pharmacy records, coupled with evidence that he

had written "homoerotic" novels, worked with AIDS groups, and seen an internist with an

interest in HIV, provided good cause to order plaintiff to submit to an HIV test.

On April 13, 2009, the Court deferred ruling on the motion.  The Court ordered

production of certain medical records and provided defendant with an opportunity to depose the

doctors whose identity plaintiff had not previously disclosed, as well as a limited deposition of

plaintiff's mother, who had provided plaintiff with a prescription drug (Flexeril).  The Court also

provided defendant an opportunity to request additional discovery.

After the Court's April 13 Order, defendant filed a motion for additional discovery and a

motion to compel, and plaintiff filed a motion to strike.  The Court ruled on those motions on

May 4, 2009, and prefaced its analysis by noting that the parties had "filed numerous motions and

sought the Court's intervention . . . with alarming alacrity" despite repeated reminders "that the

parties amicably resolve routine discovery disputes without seeking the assistance of the Court."

May 4 Order at 1.  The Court then denied defendant's motion for additional discovery as

premature and cumulative because it simply repeated the request made in the still-pending

motion for sanctions.  As to the motion to compel, the Court ordered production of plaintiff's

MCAT scores and tax records since 2005.  Finally, the Court clarified the scope of previously-

ordered discovery and granted plaintiff's motion to strike a reply brief filed without permission

by defendant.

Pursuant to the Court's April 13 Order, the parties filed supplemental memoranda

supporting and opposing defendant's motion for sanctions on June 10, 2009, and June 17, 2009,

respectively.  Also on June 10, 2009, defendant filed a motion to strike, and on June 19, 2009,

defendant filed a motion for leave to file a third supplemental memorandum.  All three motions

are now ripe for resolution.

## ANALYSIS

The Court ordered further discovery to permit defendant to explore whether plaintiff had

withheld information to conceal a pre-existing back condition or HIV/AIDS status.  Before the

Court's April 13 Order, defendant had argued that plaintiff had likely seen Dr. Terry Thompson

for treatment of a pre-existing back injury, see Def.'s Mar. 23, 2009 Supp. Mem. at 1-2, and that

plaintiff had seen Dr. Ricardo Caldera for HIV/AIDS-related treatment, see Def.'s Mem. in

Support of Mot. for Sanctions at 10-11.  Plaintiff's averments to the contrary were lies, defendant

surmised, so sanctions were appropriate.  But because the record was incomplete at the time,

further discovery was warranted.  If the testimony of Dr. Thompson and Dr. Caldera showed that

defendant's prediction was correct, then plaintiff's withholding of their identities in the face of

court orders might indeed be sanctionable.

Although the Court permitted further discovery, defendant's June 10 supplemental

memorandum essentially ignores the new deposition testimony.  A review of the deposition

transcript shows why.  Dr. Thompson testified that he treated plaintiff because of a hip strain, not

because of back pain.  Thompson Dep. at 48:9-20.  Dr. Caldera testified that he treated plaintiff

because of injuries sustained during the accident forming the basis of this case, not for any

HIV/AIDS-related reasons.  Caldera Dep. at 50:19-22; 67:1-7; 70:11-14.  Hence, the additional

discovery plainly shows that plaintiff did not intentionally fail to disclose the identities of Dr.

Thompson and Dr. Caldera in order to hide a pre-existing condition.

Defendant nonetheless argues that plaintiff's motives are suspect because he has not fully complied with the Court's May 4 Order requiring the production of tax records since 2005 by May 18, 2009. In response to the Court's May 4 Order, plaintiff produced his tax return for 2008, an undated, unsigned and amended tax return for 2007, and "records of account" for 2005 and 2006. On May 12, 2009, defendant requested the actual returns for 2005 and 2006 and plaintiff requested those returns from the Internal Revenue Service the next day. See Braunstein Decl. ¶ 4. On May 20, 2009, and again on June 3, 2009, defendant requested documentation to back up more than $42,000 taken in business and medical deductions over those four years. Plaintiff provided documentation for a portion of the deductions on June 10, 2009.

Defendant's efforts to characterize plaintiff's behavior as sanctionable are unconvincing. No bad faith is discernable from the correspondence between the parties and the materials produced by plaintiff. Plaintiff's counsel responded promptly to defendant's requests and asked defendant to notify him if it believed that production was incomplete. See May 11, 2009 Letter from J. Cammarata to D.S. Schwinn; May 15, 2009 Letter from J. Cammarata to S. Allenson. Although plaintiff has apparently not yet received 2005-06 tax forms from the IRS, he timely requested those forms and the IRS's delay in providing them does not amount to sanctionable conduct by plaintiff. Nor does plaintiff's incomplete[2] production of back-up documentation constitute bad faith. Defendant first requested back-up documentation on May 20, 2009, two days after the deadline for production had passed. See May 20, 2009 Letter from S. Allenson to

---

[2] The Court's May 4 Order required the production of "full tax records" from 2005 to the present. The term "records" encompasses documentation attached to plaintiff's tax returns for those years. To the extent plaintiff has not produced the back-up documentation attached to his tax returns for 2005 to the present, he shall do so forthwith.

J. Cammarata.

In sum, the Court has provided defendant with ample opportunity to demonstrate that plaintiff has withheld information in bad faith. A motion that has spawned no fewer than eighteen briefs, three additional depositions, documentary discovery, and hundreds of pages of appendices has revealed no evidence to undercut plaintiff's claim that he simply forgot the names of two doctors. Nothing in the record shows that he has hidden the identities of doctors or pharmacies to hide a pre-existing condition. Accordingly, defendant's motion for sanctions is hereby **DENIED**.

In a final effort to persuade the Court that plaintiff has acted in bad faith and is deserving of sanction, defendant filed a motion for leave to file a third supplemental memorandum in support of its motion for sanctions. Attached to the motion is a memorandum in which defendant argues that new evidence that plaintiff applied to become a podiatric surgeon in January 2008 -- after the incident at issue in this case -- somehow demonstrates that his motives were nefarious. To be sure, plaintiff's application to become a podiatric surgeon is relevant to his wage loss claim -- a jury may find that he is able to work as a podiatric surgeon and hence is not entitled to future lost wages or is entitled to less than he claims.

But plaintiff's application to become a podiatric surgeon has nothing to do with defendant's motion for sanctions. The application is irrelevant to defendant's claim that plaintiff is seeking to conceal a pre-existing back condition and to defendant's unsubstantiated claim that plaintiff is seeking to conceal HIV/AIDS status. This is precisely the kind of frivolous and vexatious motion barred by the Federal Rules of Civil Procedure.

Indeed, the Court has warned the parties several times that it has little patience for such

motions.  On May 4, for example, the Court noted that

> [a]lthough the Court has repeatedly stressed its preference that the
> parties amicably resolve routine discovery disputes without seeking
> the assistance of the Court, the parties through their respective
> counsel have filed numerous motions and sought the Court's
> intervention in such disputes with alarming alacrity.  It bears
> repeating yet again: it is the Court's hope -- indeed, its expectation
> -- that the parties will resolve any remaining discovery disputes
> through negotiation and compromise.

May 4 Order at 1.  Furthermore, the Court has already denied other motions or briefs filed by

defendant as premature or filed without leave of court.  For example, the May 4 Order denied

defendant's motion for production of certain HIV-related materials as premature and duplicative,

noting that defendant's motion for sanctions -- which was still pending -- made the exact same

request.  Id.  Similarly, the Court also granted plaintiff's motion to strike defendant's reply brief,

which was unnecessary, not contemplated by a previous briefing schedule, and filed without the

Court's permission.  Id. at 3.

"Rule 11 sanctions protect the court from frivolous and baseless filings that are not well

grounded, legally untenable, or brought with the purpose of vexatiously multiplying the

proceedings."  Butler v. Potomac Elec. Power Co., Civ.A.No. 03-0946, 2004 WL 4972367, at *5

(D.D.C. Aug. 25, 2004) (internal quotations and citations omitted).  "The test [for sanctions]

under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that

there was no basis in law or fact for the asserted claim.  The Court must also take into

consideration that Rule 11 sanctions are a harsh punishment, and what effect, if any, the alleged

violations may have had on judicial proceedings."  Sharp v. Rosa Mexicano, D.C., LLC, 496 F.

Supp. 2d 93, 100 (D.D.C. 2007) (internal quotations and citations omitted).  Similarly, 28 U.S.C.

§ 1927 provides that: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Hence, a violation of § 1927 "occurs when a lawyer's conduct goes beyond mere negligence and carelessness and is reckless in light of the circumstances." Mims v. BCE, Inc., Civ.A.No. 03-2203, 2009 WL 464263, at *2 (D.D.C. Feb. 24, 2009) (citing United States v. Wallace, 964 F.2d 1214, 1219 (D.C. Cir. 1992)).

Whatever patience the Court once had has now run out. Defendant's motion for leave to file a third supplemental memorandum in support of its motion for sanctions has no basis in law or fact. Resolution of the motion has required not only the Court's attention, but also briefing from plaintiff. Under Rule 11 and § 1927, the appropriate sanction for such a motion is an award of attorneys' fees reasonably incurred by plaintiff because of defendant's motion. See § 1927. Accordingly, defendant's motion is hereby **DENIED** and plaintiff is awarded attorneys' fees reasonably incurred by plaintiff because of the motion.[3]

The final motion is defendant's motion to strike the late-designated expert report of Dr. Estelle Davis. Dr. Davis -- who is not a medical doctor -- originally filed an expert report on May 22, 2008. She did not offer any medical opinions. Instead, relying on the medical opinions of the physicians who had treated plaintiff, Dr. Davis opined as to what plaintiff might earn as a practicing podiatric surgeon, what he currently earns as a project manager, and what he might

---

[3] Within fourteen days of this Memorandum Opinion and Order, plaintiff shall file a detailed billing breakdown of the fees reasonably incurred that he seeks. The Court will then determine what fees shall be recovered.

earn as a manager if he obtained an advanced degree in health administration.  The deadline for

disclosing expert opinions was June 9, 2008, and Dr. Davis was deposed on November 3, 2008.

Then, on March 30, 2009, Dr. Davis sent a letter to plaintiff's counsel stating that "independent

of Dr. Scrugg's [sic] back pain, given the persistence and the permanence of his vertigo, Dr.

Scruggs is not able to perform the occupation of a Podiatric Surgeon."  See Mar. 30, 2009 Letter

from E. Davis to J. Cammarata.  Defendant seeks to strike this March 30 letter.

Defendant takes issue with the March 30 opinion because it was filed after the deadline

for disclosing expert opinions and after Dr. Davis was deposed.  While troubling, the delay in

filing is not sufficient reason to grant defendant's motion to strike.  Indeed, the Court denied a

similar motion to strike filed by plaintiff.  On December 10, 2008, defendant offered a

supplemental report by its vocational rehabilitation expert, Dr. Rose.  The deadline for disclosing

expert opinions had passed and Dr. Rose's deposition had already been conducted.  See January

14, 2009 Order at 1.  The Court denied plaintiff's motion to strike, permitted the supplemental

report to be filed, and allowed plaintiff to depose Dr. Rose further regarding the new issues

raised in the supplemental report.  Id.  The Court will follow the same approach here.

Defendant also characterizes the March 30 opinion as "a perfect example of sandbagging"

because defendant has no opportunity to respond and cannot adequately prepare for trial.  Def.'s

Mem. in Support of Mot. to Strike at 5-6.  This is an overstatement for several reasons.  To begin

with, this case is not on the verge of going to trial.  Nor is defendant deprived of an opportunity

to respond.  As described above, the Court previously permitted defendant to supplement an

expert report provided plaintiff had an opportunity to re-open the expert's deposition, and the

Court will follow the same approach here.  Furthermore, plaintiff contends that he cannot work

because he is disabled.  That is a medical question.  As noted above, Dr. Davis is not a medical

doctor.  Her expert opinion relies on physicians' opinions that plaintiff cannot work as a podiatric

surgeon, and based on the physicians' opinions she opines as to what plaintiff might earn.

Plaintiff's physicians have consistently opined that plaintiff's back pain and vertigo are

independent causes of his inability to work as a podiatric surgeon.  See, e.g., Macedo Dep. at

94:19-95:14.  Hence, plaintiff's position that he is unable to work because of vertigo cannot have

caught defendant off guard.[4]

      Accordingly, defendant's motion to strike is hereby **DENIED**.  If defendant wishes to

depose Dr. Davis regarding her March 30 opinion, then defendant may do so. The deadline for

discovery is extended until August 10, 2009 for this purpose.

      **SO ORDERED.**


                        /s/ John D. Bates
                          JOHN D. BATES
               United States District Judge


Date: July 13, 2009

---

[4] Plaintiff avers that Dr. Davis's March 30 opinion is offered only to show that plaintiff's lost wages remain the same regardless of the reason he is unable to work as a podiatric surgeon. See, e.g., Pl.'s Opp. to Def.'s Motion to Strike at 5.  The opinion would stand on much shakier ground were plaintiff offering it as a medical opinion because Dr. Davis appears unqualified to render medical conclusions.  But defendant has not challenged Dr. Davis's qualifications as an expert; it has only challenged the timeliness of her March 30 opinion.